CORPORATION & SECURITIES COMMISSION *v.*
MICHIGAN CONSOLIDATED GAS COMPANY.

Opinion of the Court.

1. Taxation—Corporation and Securities Commission—Public
Utility—Public Service Commission—Accounting.

Corporation and securities commission, in determining corporation franchise fees of a public utility, is bound by accounting treatment of item by public utility company where that treatment is compelled by order of public service commission under its rule-making authority (CL 1948, § 450.304, as amended; CLS 1961, § 460.1 *et seq.*; 1954 AACS, § R 460.600).

2. Statutes—Construction—Legislative Inaction.

The fact that legislature has failed to restrict rule-making powers of public service commission during extended period following judicial interpretation of statute as making public service commission accounting rules binding on corporation and securities commission for purposes of computing franchise fees is evidence of approval by legislature of that construction (CL 1948, § 450.304, as amended; 1954 AACS, § R 460.600).

Dissenting Opinion.

T. M. Kavanagh and Adams, JJ.

3. Taxation—Corporation and Securities Commission—Public
Service Commission.

*State franchise fees for public utility companies should be determined by corporation and securities commission without regard to the accounting methods of the public service commission (CL 1948, § 450.304, as amended).*

REFERENCES FOR POINTS IN HEADNOTES
[1]  51 Am Jur, Taxation § 941.
[2]  2 Am Jur 2d, Administrative Law §§ 242, 254.
[3]  51 Am Jur, Taxation § 824.
[4]  5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

4. COSTS—STATUTORY CONSTRUCTION.

> *No costs should be allowed on appeal from summary judgment holding corporation and securities commission bound by public service commission accounting regulations, matters of statutory construction being involved (CL 1948, § 450.304, as amended; 1954 AACS, § R 460.600).*

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and J. H. Gillis and Holbrook, JJ., affirming Ingham, Coash (Louis E.), J.   Submitted June 11, 1968.   (Calendar No. 11, Docket No. 51,877.) Decided July 20, 1968.

7 Mich App 552, affirmed.

Complaint by Corporation & Securities Commission and Lenton G. Sculthorp, Commissioner, against Michigan Consolidated Gas Company, a Michigan corporation, and others, seeking a declaration of rights as to whether the Corporation & Securities Commission, in determining a corporation's surplus for the purpose of computing its annual franchise fees, is required to accept the "surplus" shown on the corporation's books maintained pursuant to accounting procedures set up by the Public Service Commission.   Summary judgment for defendant Michigan Consolidated Gas Company. Plaintiff appealed to Court of Appeals.   Affirmed. Plaintiff appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William D. Dexter,* Assistant Attorney General, for plaintiff.

*Matheson, Dixon & Bieneman (John M. Veale,* of counsel), for defendant Michigan Consolidated Gas Company.

PER CURIAM. The reviewed issue was discussed and decided last by a panel of the Court of Appeals. *Corporation & Securities Commission* v. *Michigan Consolidated Gas Company* (1967), 7 Mich App 552. It has been before this Court in variantly sulphurous phases since 1960 (*Detroit Edison Company* v. *Corporation & Securities Commission* [1960], 361 Mich 150; *Detroit Edison Company* v. *State* [1960], 361 Mich 290) and requires no expatiation. For a recent summary of details, see *Corporation & Securities Commission* v. *American Motors Corporation* (*Appeal re Detroit Edison Company*) (1967), 379 Mich 531, 538–550.

In 1962 a majority of participating Justices affirmed the judgment of the court of claims in *Detroit Edison Company* v. *Corporation & Securities Commission* (1962), 367 Mich 104, 106. The essence of that court's judgment was written by then Circuit Judge Timothy C. Quinn, now a distinguished member of the Court of Appeals. It follows (367 Mich 104, 107):

"Now, first of all, with respect to issue (a) under paragraph 4 of the pretrial statement, which is stated as follows:

" 'Is the corporation and securities commission bound by the accounting procedures set up by the Michigan public service commission with respect to utilities in determining the annual franchise fee?'

"The public service commission is a body set up by statute to control and regulate public utilities with an idea of protecting the stockholders and the utilities as well as the consumer public. They set the rates, and so forth. By statute and regulation, which is R 460.600 in the Administrative Code [1954], they prescribe in great detail the system of accounts that the utilities like the Detroit Edison must keep, and exhibits E and F in this record indicate 2 rulings by the public service commission

that an item similar to the item involved in this litigation shall not be carried on the books of the company as surplus, and to this court it is incongruous that that order of the public service commission would not be binding on another branch of the State for another purpose, and it is the opinion of this court that the 2 orders, shown in exhibits E and F, of the public service commission are binding on the corporation and securities commission so far as the classification of the item involved in this litigation is concerned."

Since this Court's 1962 judgment of affirmance was entered, valiant efforts have been made to persuade the public service commission that it should alter or rescind public utility commission accounting orders such as Judge Quinn considered and held controlling. (Examples appear as appendices "A" and "B", 367 Mich 104, 111–115.) The present defendant-appellee is bound by like orders.[1] Details of such efforts were considered in the 1962 *Edison Case* (367 Mich 104, 110), and again in the 1967 *Edison Case* (379 Mich 531, 548).

All such efforts were unavailing. They were designed of course to render viable the dissenting opinion of Justice EDWARDS in the first *Edison Case* (361 Mich 150, 158–166), holding that the attorney general's submitted view of the term "surplus" (refer to CLS 1956, § 450.304 [Stat Ann 1959 Cum

---

[1] "These orders likewise became final without appeal. The accounting and rate-making findings made in the Detroit Edison and Michigan Consolidated proceedings have been followed by this commission in all subsequent rate cases including complete consideration of the subject as recent as May, 1961. [Here follow 5 citations.] From the foregoing, it is clear that all accounting and rate-making aspects of a utility's election to use accelerated depreciation have been fully raised, argued, considered, and decided a considerable length of time prior to the commencement of the instant investigation. The commission in all its decisions has consistently followed the same accounting and rate-making treatment of this matter. The record shows that numerous managerial decisions and financial commitments were based on such findings and orders," 49 PUR3d 7.

Supp § 21.205]) was right and that the same should be held controlling as against the mentioned orders of the public service commission.

It makes our story short, and better told, to report that a majority of the Justices find themselves in accord with Judge Quinn's reasoning as set forth in the 1962 *Edison Case*. It is adopted accordingly with the following observations.

The first of these public service commission orders which was brought to attention here dates back to 1951. The commission, although continuously pressured so to do, has since refused to modify or vacate that order and like ensuing orders. The legislature, too, has refused in the interval to modify or otherwise restrict the commission's broad powers of superintendence of the public utility corporations of Michigan. That body has refused also to amend said section 450.304 so that "surplus," as defined therein, be applied according to that which the corporation and securities commission and revenue department have advocated. And if it be conceded (*arguendo* only of course) that section 450.304 has been ambiguously open to the construction and application contended for by these bureaus, it is passing strange that they, aided by the legal department of the State, have not been able to sell legislation implementing what they have tried to accomplish by other means, such as the repeated denial of a corporate taxpayer's right of "prompt" redetermination (see 361 Mich 290, 294–302; 379 Mich 531, 538–550) and years of unsuccessful litigation against that taxpayer and other similarly situated corporations.

For the most recent evidence that Judge Quinn must have arrived at correct judgment, both in the *Edison Case* (367 Mich 104) and the *McLouth Case* (372 Mich 76), consider legislative turndown of the

treasury department's latest effort to have section 450.304 amended to comport with Justice Edwards' said view. Refer to the third reading and passage by the House of HB 2832. That bill, by amendment, included the significant words "reserves for deferred federal income taxes arising from depreciation and amortization are not deductible in determining 'surplus' as used in this act." (House Journal, May 8–9, 1967.) The bill including the quoted words went to the Senate taxation committee. There it remained until end of the current legislative session[2] where, as the saying goes, it died.

The foregoing is fair proof that the construction placed on each of the involved statutes by Judge Quinn (that was back in 1961) has not met with legislative disapproval, or even legislative concern over the impact of his reasoning upon the coffers of Michigan's treasury. It points up what was said in *W. H. Atkinson Co.* v. *State Board of Tax Administration* (1941), 299 Mich 315, 319 (successful action to enjoin collection of sales tax):

"Opportunity to have the statute amended, if desired, has been afforded by seven years' time, and there has been none with respect to the issues at bar."

The judgment of the panel of the Court of Appeals is affirmed. Costs of all courts to the defendant-appellee.

Dethmers, C. J., and Black, O'Hara, and T. E. Brennan, JJ., concurred.

T. M. Kavanagh, J. (*dissenting*). The main issue of controversy is whether or not the State franchise

---

[2] The bill having been introduced in 1967 required no new introduction this year. See Const 1963, art 4, § 13.

fees shall be determined by the Michigan corporation and securities commission on the basis of accounting methods permitted or required by the Michigan public service commission for rate-making purposes.

For the reasons set forth in my opinion in *McLouth Steel Corporation* v. *Corporation & Securities Commission* (1963), 372 Mich 76, and for the reasons given by Justice EDWARDS in dissent in *Detroit Edison Company* v. *Corporation & Securities Commission,* 361 Mich 150, 158, by Justice SOURIS in dissent in *Detroit Edison Company* v. *Corporation & Securities Commission* (1962), 367 Mich 104, and by Judge HOLBROOK in dissent in *Corporation & Securities Commission* v. *Michigan Consolidated Gas Company* (1967), 7 Mich App 552, 558, we would hold that the franchise fees should be determined without regard to the Michigan public service commission's accounting methods. We should reverse the judgment of the Court of Appeals.

Matters of statutory construction being involved, no costs will be allowed.

ADAMS, J., concurred with T. M. KAVANAGH, J.

KELLY, J., took no part in the decision of this case.